UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JENNIFER BOGGS, for next friend and
husband LARRY LEALLEN BOGGS, SR.,

Plaintiff,

v.

CAUSE NO. 3:19-CV-368 DRL-MGG

WILLIAM REDMAN, JULIE LAWSON,
GEORGE HOLVOET, KEVIN
BROTHERS, and HANNAH SMITH,

Defendants.

OPINION AND ORDER

Mr. Larry Boggs was brutally attacked by another inmate while incarcerated in the St. Joseph County Jail. Because he is now incapacitated and permanently disabled, Ms. Jennifer Boggs has sued various officers for her husband alleging violations of his constitutional rights under 42 U.S.C. § 1983 and a state law claim of negligence. St. Joseph County Sheriff William Redman, St. Joseph County Jail Warden Julie Lawson, Lieutenant George Holvoet, Deputy Kevin Brothers, and Deputy Hannah Smith have moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

FACTUAL BACKGROUND

The complaint paints the following picture accepting its well-pleaded allegations as true for this motion and drawing inferences in the light most favorable to Ms. Boggs. Mr. Boggs, a 135-pound white male and roofer by trade, was arrested on July 24, 2017 in South Bend, Indiana for one misdemeanor offense. ECF 4 ¶ 7, 10, 31. Officers transported him to the St. Joseph County Jail where Deputy Smith then booked, searched, screened, and interviewed him. *Id.* ¶ 8-9.

During booking, Deputy Smith (and other unnamed officers) saw that Mr. Boggs had a white supremacist prison gang symbol tattooed on his chest with the words "Aryan Brotherhood" along with other tattoos and an iron cross. *Id.* ¶ 11. Despite these markings, Deputy Brothers, a jail

classification officer, placed Mr. Boggs in a cellblock where the deputy knew his safety would be imminently threatened by "non-white gang members and others violently opposed to white supremacist prison gangs" who could overwhelm his modest size and ability to defend against a physical attack. *Id.* ¶ 13-14. Although the complaint is less than clear on this point, it alleges that Deputy Brothers twice claimed that Mr. Boggs had no gang affiliation or conflict issue. *Id.* ¶ 15, 17.

Four days passed without incident. The morning of July 28, 2017, another inmate, alleged to be "non-white," attacked and attempted to murder Mr. Boggs, leaving him unconscious and severely bleeding. *Id.* ¶ 20-21. The complaint alleges that none of the defendants intervened to protect Mr. Boggs, though it offers little as to where the various officers were stationed that morning other than generally that Warden Lawson was supervising the jail and Lieutenant Holvoet was supervising the cellblock. *Id.* ¶ 19, 22. Officers responded to Mr. Boggs after another inmate discovered him unconscious. *Id.* ¶ 23.

The altercation required five months of hospital care for severe brain trauma and numerous skull fractures. *Id.* ¶ 24-25. Even today, Mr. Boggs remains paralyzed and confined to a wheelchair, without the ability to speak. *Id.* ¶ 28. Ms. Boggs cares for Mr. Boggs fulltime as well as three minor children. *Id.* ¶ 29-30. The other inmate was convicted for his role in the attack. *Id.* ¶ 27.

STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible and establishes a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claim need only be

plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

DISCUSSION

In addition to a state law negligence claim, Ms. Boggs filed several federal constitutional claims under the Fourth Amendment and Fourteenth Amendment's Due Process Clause and Equal Protection Clause. In large measure, she claims that the various officers named as defendants failed to protect Mr. Boggs from his assailant while in custody. 42 U.S.C. § 1983 provides a right of action to any person who is deprived "of any rights, privileges, or immunities secured by the Constitution and laws."

A.   Sheriff William Redman

Ms. Boggs has sued Sheriff Redman in his official representative capacity. "A suit against a governmental officer in his official capacity is really a suit against the entity of which the officer is an agent." *Franklin v. Zaruba*, 150 F.3d 682, 684 n.2 (7th Cir. 1998). "There is no *respondeat superior* liability under section 1983," so "the violation of the plaintiff's rights must result from a municipal custom or policy [for] the municipality to be held liable." *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)); *accord Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). At this stage, mere "[b]oilerplate allegations of a municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 202 (7th Cir. 1985). There must be an "affirmative link" between the policy and the alleged constitutional violation; the policy must be the moving force behind the violation. *Sivard v. Pulaski Cty.*, 17 F.3d 185, 188 (7th Cir. 1994); *see also Grieveson*, 538 F.3d at 771.

3

Ms. Boggs has adumbrated no facts that would support an inference of a policy—whether an official policy, unwritten custom, or "series of violations to lay the premise of deliberate indifference" or to sustain an official capacity § 1983 claim. *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010); *Rodgers*, 771 F.2d at 201-02. She occasionally alleges that certain acts occurred "by policy" (ECF 4 ¶ 5, 33, 35), but that boilerplate language offers no definition to the alleged policy and provides no context for finding such a policy to have motivated the constitutional deprivation. Granted, this case remains at the pleading stage as Ms. Boggs points out, but she cannot proceed without some facts that would make her claim plausible. *See Iqbal*, 556 U.S. at 678, 681; *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010). Her allegations are insufficient to state this § 1983 claim. *See Rodgers*, 771 F.2d at 202.

B.  Failure to Protect Claims

Ms. Boggs alleges that public officials failed to protect her husband while both an arrestee and pretrial detainee (ECF 4 ¶ 33, 35). The distinction matters because the Fourth Amendment governs that period of confinement between arrest without a warrant and the preliminary hearing where a probable cause determination is made, while the Fourteenth Amendment governs confinement after the initial determination of probable cause. *See Lopez v. Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). An "objectively unreasonable" standard applies under the Fourth Amendment, and a "deliberate indifference" standard applies under the Fourteenth Amendment's concepts of due process. *See id.*

The complaint suggests that Mr. Boggs was a pretrial detainee at the time of his injuries—he not just alleges this fact at one point, but bond already had been set before the July 28 altercation (ECF 4 ¶ 18)—but the parties have not clearly parsed the timing out or what conduct falls under which standard to direct the court to a singular constitutional analysis at this pleading stage; and the complaint separately alleges that Mr. Boggs was both arrestee and pretrial detainee (*Id.* 4 ¶ 33, 35). Thus the court begins with the Fourteenth Amendment.

4

"The due process clause protects pretrial detainees from deliberate exposure to violence and from the failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted." *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992). A pretrial detainee derives his right from the Fourteenth Amendment because the state cannot punish him without securing a formal adjudication of guilt. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). In this context, the deliberate indifference standards of the Eighth and Fourteenth Amendments have little practical difference, and case law from both constitutional amendments can offer guidance. *Washington v. LaPorte Cty. Sheriff's Dept.*, 306 F.3d 515, 517 (7th Cir. 2002); *Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000).

Officers cannot deliberately and without justification place a pretrial detainee in a jail in which his health or safety would be endangered. *See also Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994) (recognizing for prisoners). The detainee must show that there was a substantial risk beforehand that serious harm might occur. *Brown*, 398 F.3d at 910; *accord Goka v. Bobbitt,* 862 F.2d 646, 651 (7th Cir. 1988) (state actor must know of risk or "that the risk of violence was so substantial or pervasive that the defendants' knowledge could be inferred"). Prison officials must have effectively condoned the attack by allowing it to happen. *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). A due process violation requires "deliberate indifference" to or "reckless disregard" of the detainee's right to be protected from harm. *Swofford*, 969 F.2d at 549.

That said, prison officials aren't expected to eliminate the possibility of all dangers, and the right to reasonable protection does not include the right to protection from random acts. *McGill v. Duckworth*, 944 F.2d 344, 345 (7th Cir. 1991), *overruled on other grounds*, *Farmer*, 511 U.S. at 825. An "unfortunate random act of violence in a prison . . . does not impose liability on prison officials." *Washington*, 306 F.3d at 519. "[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson*, 538 F.3d at 777. The "mere failure of the prison official to choose the best course of action does not amount to a constitutional violation."

5

*Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)).

A failure-to-protect claim cannot then be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown*, 398 F.3d at 913 (quoting *Weiss*, 230 F.3d at 1032). A detainee must establish that "the defendant [] had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010); *accord Brown*, 398 F.3d at 913 (same).

The motion to dismiss has some cogency given that Ms. Boggs argues that prison officials should have implemented a better segregation system based (arguably) on the mere inevitability that violence would occur between a noticeably tattooed Mr. Boggs and other non-minded detainees. *See Weiss*, 230 F.3d at 1033 (dismissal of failure to protect claims proper because plaintiff had only alleged that the officials' inadequate classification system subjected prisoners like him to an "inevitable" risk of assault); *Wilson v. Ryker*, 451 Fed. Appx. 588, 589-90 (7th Cir. 2011) (prison's policy of housing opposition gang members together coupled with staff's failure to make rounds or respond to panic-button calls did not state a failure to protect claim). A claim of being housed with detainees of different races, gang affiliations, or socio-political perspectives without more is too uncertain to state a plausible failure-to-protect claim.

Although Ms. Boggs does not offer a single case or authority to aid the court in assessing her complaint, the court remains of the view that she has alleged—for purposes of the pleading stage—enough facts to proceed with her failure-to-protect claim under the Fourteenth Amendment. The complaint alleges the knowledge of both Deputy Smith and Deputy Brothers that Mr. Boggs had a white supremacist prison gang symbol tattooed on his chest with the words "Aryan Brotherhood" along with other tattoos and an iron cross. Given Deputy Smith's role in booking, searching, screening,

and interviewing Mr. Boggs, the court cannot say now, as the defense argues, that she was not involved in his ultimate classification or placement.

The complaint also alleges that Deputy Brothers "knew that because of [Mr. Boggs'] small size and perceived affiliation with a white supremacist prison gang his life and safety would be put at imminent risk of danger" (ECF 4 ¶ 13). At least for purposes of pleading, this risk was not generalized but particularized to "non-white" gang members and others "violently opposed to white supremacist prison gangs who Defendants Brothers knew would imminently threaten [his] safety" (*Id.* ¶ 14). It is not lost on the court that four days of confinement passed without incident, but that conceivably, at pleading, does not lessen an otherwise substantial risk that needed to await preparation or mere opportunity to materialize into action. Whether there actually had been such a history of violence of this nature, or other material indicators of such violence or its likelihood, to confer knowledge on these two deputies only discovery will tell, but the court cannot say based on the complaint alone that the claims are implausible. *See Santiago*, 599 F.3d at 758 (assaulted prisoner stated failure-to-protect claim against warden by alleging that warden knew or should have known that his cellmate had history of assaulting cellmates); *Brown*, 398 F.3d at 913 (assaulted white prisoner stated failure-to-protect claim by alleging that prison officials allowed unsupervised access to facility's dayroom to black resident with known propensity to attack whites); *Weiss*, 230 F.3d at 1032 ("Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's.").

What is more, the complaint alleges that Deputy Brothers twice claimed that Mr. Boggs had "no gang" affiliation and "no conflict" with other detainees on his cellblock—an allegation that, albeit less than clear, plausibly supports a claim of deliberate indifference. *See Haley*, 86 F.3d at 641 ("factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious") (quoting *Farmer*, 511 U.S. at 842). The added allegation that Deputy Brothers failed

7

to regularly monitor the cellblock in person or by camera, knowing as the complaint contends that Mr. Boggs was in imminent danger, likewise bears on this subject and could, if evidence later proves it, provide context to what is now just plausible enough to proceed. Accordingly, the court must deny the motion to dismiss the Fourteenth Amendment claim against Deputy Smith and Deputy Brothers.

The court is not likewise convinced as this claim concerns Warden Lawson or Lieutenant Holvoet. "Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates." *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017). Ms. Boggs must show that these two individuals were "personally involved in the constitutional violation." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). As supervisors, they must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [they] might see." *Id.* (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). The mere generalized allegation that Warden Lawson and Lieutenant Holvoet, as supervisors, failed to regularly monitor Mr. Boggs or his cell is not sufficient to adumbrate a plausible Fourteenth Amendment failure-to-protect claim under these circumstances.

The Fourth Amendment, to the extent that it may apply to Mr. Boggs as arrestee and not pretrial detainee, utilizes a reasonableness test—in a manner of speaking, a less exacting standard than Fourteenth Amendment deliberate indifference. *See Lopez*, 464 F.3d at 719. That makes sense: if officers arrest a man and toss him in jail, and that man has not yet appeared before a judge to determine whether there was probable cause of the arrest, the jail should particularly exercise ongoing caution to ensure that it is not violating the man's rights in the meantime. *See, e.g., Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473-75 (2015). Ms. Boggs must establish that the defendants' conduct was objectively unreasonable under the circumstances. *Lopez*, 464 F.3d at 719. Assuming a Fourth Amendment failure-to-protect claim extends to third-party violence, rather than just constitutional violations by a

fellow officer,[1] *see, e.g., Williams v. Brooks*, 809 F.3d 936, 944 (7th Cir. 2016); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Yang v. Hardin*, 37 F.3d 282, 284 (7th Cir. 1994), and construing all reasonable inferences in Ms. Boggs' favor, the complaint states a plausible claim against Deputy Smith and Deputy Brothers, but not against Warden Lawson or Lieutenant Holvoet.

3. Equal Protection Claim

Ms. Boggs also claims that officers violated her husband's rights to equal protection. "To establish a *prima facie* case of discrimination under the equal protection clause, [one must show] that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (internal quotations omitted). While the complaint generally alleges discrimination, it does not allege that Mr. Boggs was a member of a protected class, that he was similarly situated to individuals not members of his protected class, or that he was treated differently than these other individuals. Nor has the complaint specified how race played a part in the decision-making of the officers. This claim must therefore be dismissed.

CONCLUSION

Accordingly, the court GRANTS and DENIES the motion to dismiss (ECF 6) in relevant part—namely (a) GRANTS the motion as to Sheriff William Redman and DISMISSES all federal constitutional claims against him, (b) GRANTS the motion as to Warden Julie Lawson and Lieutenant George Holvoet and DISMISSES all federal constitutional claims against them; (c) DENIES the motion as to Deputy Kevin Brothers and Deputy Hannah Smith to the extent of Fourth Amendment or Fourteenth Amendment claims; (d) GRANTS the motion and DISMISSES the equal protection

---

[1] The defense offers the *Lewis* standard for the Fourth Amendment claim, which speaks in terms of a fellow officer committing a constitutional violation, not another inmate; and some federal courts have concluded that the Fourth Amendment is limited in this regard. Because the parties have not argued this theory of limitation, the court has not addressed the issue at this stage.

claim against all defendants; and (e) DENIES the motion as to the state law claims, in that federal claims remain.

SO ORDERED.

September 4, 2019

*s/ Damon R. Leichty*
Judge, United States District Court